IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRYDEL RESEARCH PTY. LTD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4977 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ITW GLOBAL TIRE REPAIR, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Discovery in this case about tire repair spray began in February 2022. [Dkt. #23]. On June 23, 2022, the court set April 28, 2023, as the close of discovery. [Dkt. #39]. The parties then missed that deadline and a few more, as explained below:

> March 14, 2023 – the court granted an extension of three months to July 31, 2023. [Dkt. #65]
>
> June 30, 2023 – the court granted a second extension of two months to September 29, 2023. [Dkt. #69].
>
> September 1, 2023 – the court granted a third extension of three months to December 29, 2023. [Dkt. #76].
>
> December 22, 2023– the court granted a fourth extension of a month and a half to February 16, 2024. [Dkt. #82].

On February 13, 2024 – just three days before discovery was set to close – the plaintiff asked for another month and a half to take a couple non-party depositions that had been left until the last minute, having issued the subpoenas on February 7, 2024. [Dkt. #84, at 2]. Over the defendant's objection, the court granted the plaintiff's motion for a fifth extension of a month and a half to March 29, 2024. [Dkt. #87].

The plaintiff made additional use of at least part of that fifth extension to file a couple of motions to compel on March 7-8, 2023. [Dkt. ## 92, 94, 97, 99]. One motion has to do with whether defendant's 30(b)(6) witness, Mr. Mallon, was adequately prepared for his 103-topic deposition. The other, and the one this Order concerns, has to do with defendant's assertions of the privilege and work-product privileges to a number of questions at Mr. Mallon's deposition and at the deposition of Mr. Saltzman, defendant's former in-house counsel. For good measure, the plaintiff also wants about 240 documents the defendant has withheld from discovery under the attorney-client privilege and work-product doctrines. Obviously that's a lot to leave until the last minute and one wonders where the plaintiff would be had the motion for a fifth extension of the discovery deadline not been granted.

The timing also leads one to wonder just how important any of this discovery is. The defendant asserted the privilege and work-product to the documents plaintiff has put at issue here in June and July of 2022. [Dkt. #106-2, 106-3]. It seems odd that the plaintiff is only now, almost two years and five discovery extensions later, complaining about those assertions. Then there are the depositions. The plaintiff was made aware of the defendant's assertions of privilege and work product prior to the depositions and forged ahead nevertheless. One might have sought some kind of a ruling regarding the bounds of questioning before undertaking two seven-hour depositions. But what's past is now merely prologue.

The first deposition that plaintiff puts at issue is that of Mr. Saltzman, former in-house counsel for the defendant. Depositions of attorneys rarely go smoothly so this was always destined for some kind of motion practice. In any case, the plaintiff deposed Mr. Saltzman for just short of seven hours. During Mr. Saltzman's day-long testimony, defense counsel interposed objections,

2

over and over again, "on the basis of privilege and work product," without distinction between the two. Mr. Mallon – defendant's "Director of Global Operations" and defendant's 30(b)(6) corporate designee – also sat for a day-long deposition during which defense counsel interposed a number of "work product and privilege" objections. The plaintiff thinks that most – or perhaps all – of the objections at these two depositions were improper. We say "most – or perhaps all" because the plaintiff doesn't set out the specific questions and objections it has a problem with, instead lumping pages of testimony under various topics. [Dkt. #92, at 8-11].

And so, with the plaintiff taking the lead, the parties have determined to couch their dispute in terms of whether the work product doctrine in the main, and the attorney-client privilege to a lesser extent[1], to protect "facts." The plaintiff says that facts are never protected from discovery [Dkt. #92, at 12] and appears to have characterized every one of the questions defense counsel objected to as seeking **"non-privileged facts**." [Dkt. #92, at 7 (bold and italics in original)]. The defendant argues that, whether or not the questions at issue sought "facts", the answers implicate the impressions, analysis, and strategic considerations which are protected by the work-product doctrine or the attorney-client privilege. [Dkt. #107, at 6]. That was one choice of how to go about this, but it doesn't work here. General propositions do not necessarily decide concrete issues. *See Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J. dissenting). *See also United States v. Costello*, 666 F.3d 1040, 1050 (7th Cir. 2012)("We must not forget Holmes's aphorism, suggestive though overstated, that "general propositions do not decide concrete cases" . . . . A general proposition will

---

[1] The parties tend to conflate the work product doctrine and the attorney-client privilege beginning back at the depositions with defense counsel's objections and continuing through the briefing of this matter. Of course, while there might be some overlap, the two things are distinct. *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012).

3

often as a matter of semantics cover facts remote from those of the case in which the proposition is stated, yet the court that stated it might qualify or refine it when confronted with significantly different facts."). In this case, a ruling that endorses one party's position over the other party's position would do little good because the parties even disagree as to whether each of the questions at issue are about "facts."

Decades of applicable case dictate that this type of dispute is to be handled on a question-by-question basis. *See, e.g., United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). And that's what the parties are going to have to go back to the drawing board and do. The court has to know not only exactly which questions and objections are at issue, but what the basis is for instructing the deponent not to answer: attorney-client privilege, work product, or both. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . ."). As such, the parties will have to sit down and prepare a joint document in the following format for each question and objection at issue: (1) the question from the deposition, (2) the objection from the deposition, (3) an explanation from the defendant as to how the objection was proper, *i.e.*, how the privilege or the work product doctrine or both apply to that particular instance, and (4) the plaintiff's argument as to why they don't. In doing so, the parties need not regurgitate their general discussions of whether the privilege or work product protect "facts" as the court will have that on hand from the parties' initial rounds of filings. But they may want to take a second look at what they are calling "facts" and what they aren't and the cases their respective opponents have cited.

A bit of a guide might be in order. The attorney-client privilege protects "confidential communications" made by a client to their lawyer "[w]here legal advice of any kind is sought ... from

a professional legal advisor in his capacity as such." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010); *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). "Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 405 (7th Cir. 2018); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements. *BDO Seidman*, 337 F.3d at 811; *Evans*, 113 F.3d at 1461. The privilege is construed narrowly, and the burden is on the party seeking to invoke the privilege establish that it applies. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011); *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991).

Again, what the parties have given the court to work with are mere generalities – and that is not enough. As of now, a number of the defendant's assertions of attorney-client privilege are questionable at best. For example, how is it that the make-up of a third party's tire sealant, such as how much glycerin is in it, is a confidence of the defendant, Mr. Saltzman's client? Yet, it appears that the defendant asserted attorney-client privilege to question after question along those lines.

The work-product doctrine is essentially codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). Note that the rule covers only "documents and tangible things," *see Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023 (7th Cir. 2012); *Sandra T.E.*, 600 F.3d at 618. (7th Cir. 2010), while the issue here is deposition testimony. Most courts have

5

recognized that the "intangible hole" of Rule 26(b)(3) remains filled by *Hickman v. Taylor*, 329 U.S. 495 (1947). *See In re Turkey Antitrust Litig.*, No. 19 C 8318, 2022 WL 797180, at *11 (N.D. Ill. Mar. 16, 2022)(". . . Rule 26(b)(3)'s codification of the doctrine has been recognized as only "partial," leaving *Hickman*'s protections unscathed as applied to so-called 'intangible' work protect such as 'interviews.'"); *Walker v. White*, No. 16 CV 7024, 2019 WL 1953124, at *4 (N.D. Ill. May 2, 2019)) (noting that "established case law" confirms that "the work product doctrine extends to 'intangibles.' "); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 C 1531, 2011 WL 117048, at *2 (N.D. Ill. Jan. 12, 2011)("The Supreme Court's definition of work product in *Hickman v. Taylor*, 329 U.S. 495 (1947) also extends to "intangible" things"); *Caremark, Inc. v. Affiliated Comput. Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000) (describing Rule 26(b)(3) as applying "only to tangibles and codif[ying] that portion of the Hickman opinion that relates to documents. *Hickman v. Taylor* and other common law developments also govern intangibles, such as interviews."); *Adams v. Mem'l Hermann*, 973 F.3d 343, 349-50 (5th Cir. 2020)("*Hickman* was later partially codified as Rule 26(b)(3) in the Federal Rules of Civil Procedure.... Despite the language of Rule 26, the work-product doctrine protects both 'tangible and intangible' work product."); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007) ("[W]ork product protection remains available to 'nontangible' work product ... Otherwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions."). As such, the analysis in a deposition case tends to be a bit different than the analysis in a documents case like *Appleton Papers*.

While the plaintiff goes too far in arguing that the work product doctrine never protects "facts", it is true that courts generally find that "[f]actual information may not be withheld under the

work product doctrine, but must be produced through interrogatories, depositions, or other discovery." *Loendorf v. PeopleConnect, Inc.*, No. 21 C 51, 2022 WL 2867174, at *6 (N.D. Ill. July 21, 2022); *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 1:19-CV-2965, 2022 WL 2341290, at *8 (N.D. Ill. June 29, 2022)(". . . the work-product doctrine 'only prevents the disclosure of protected documents or communications ... not the underlying facts.'"); *Meier v. Pac. Life Ins. Co.*, No. 20-CV-50096, 2021 WL 6125774, at *4 (N.D. Ill. Mar. 19, 2021)("Only documents or protected communications are protected under the work-product doctrine; 'underlying facts are not protected.'"); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 949333, at *2 (N.D. Ill. Mar. 12, 2021) ("The work-product doctrine 'only prevents the disclosure of protected documents or communications, however, not the underlying facts.'"); *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 2644243, at *2 (N.D. Ill. June 27, 2019)("But work product does not shield facts, . . . so plaintiffs can obtain through depositions the facts [defendant] uncovered in its investigation."); *MSTG, Inc. v. AT & T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011) (noting the work-product doctrine "only prevents the disclosure of protected documents or communications ... not the underlying facts"); *Specht v. Google, Inc.*, 268 F.R.D. 596, 600-01 (N.D. Ill. 2010)(approving deposition questions that did not require attorney to divulge his mental impressions, conclusions, opinions, or legal theories about the case); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002); *Sharonda B. v. Herrick*, No. 97 C 1225, 1998 WL 341801, at *6 (N.D. Ill. June 11, 1998)("The work-product doctrine does not protect discovery of underlying factual information.";) 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2023 (". . . information that is merely factual may not be withheld under the umbrella of work product but

7

must be available, if not through the production of otherwise protectible documents, then through interrogatories or depositions."). The question here is whether the answer to an inquiry at a deposition that seemingly addresses facts would also tend to reveal the type of "intangible" work product that is at the doctrine's core: an attorney's mental processes and opinions. *See Upjohn Co. v. United States*, 449 U.S. 383, 399–400 (1981); *United States v. Nobles*, 422 U.S. 225, 238 (1975); *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D.Ill.2005) (finding that an interrogatory request asking for the identities of individuals with information and the substance of the information they possess and statements they have made does not fall within the work product privilege because it does not reveal anything about the attorney's mental process); *Specht v. Google, Inc.*, 268 F.R.D. 596, 600-01 (N.D. Ill. 2010)(approving deposition questions that did not require attorney to divulge his mental impressions, conclusions, opinions, or legal theories about the case). And, again, it is a question the parties will have to answer specifically by going beyond the mere generalities they have provided in their briefs.

      For example, a question that asks an attorney "Was there any Rule-11 basis to conclude that the Hopkins' product had any of those elements?" or "Was there any Rule 11 basis to conclude that the Hopkins' product had any synthetic rubber?" is obviously targeting an attorney's mental impressions and thus is clearly out of bounds. The attorney had to make a judgment call based on an "inquiry reasonable under the circumstances." Fed.R.Civ.P. 11(b). The same can be said for questions about whether counsel agreed or disagreed with a statement or thought a product was infringing. On the other hand, a question that asks "Did you investigate the allegations of that paragraph after receiving this letter?" or "Was any testing done to determine the components in the

8

tire sealant?" doesn't reveal any opinions or theories. Either there was a test or there wasn't.[2]

These are just a handful of examples and court isn't saying that some argument might be made in either direction regarding the foregoing types of questions or any of the questions that are at issue. Again, I have not even been told what questions and objections are in fact in issue or what privilege is thought to apply to what questions. All I am saying is, based on what little the parties have provided in their briefs, the parties have provided too little to allow for a ruling of any value.

As they work through their disputed questions and case law, the parties should recall that a court has broad discretion resolving discovery disputes. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Alicea v. County of Cook*, 88 F.4th 1209, 1218 (7th Cir. 2023); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). As the court has explained previously, that:

> means there are, generally, no "wrong" discovery decisions. Being a range, not a point, discretion allows two decision-makers – on virtually identical facts – to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. Compare *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). *See also Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011)("it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both."); *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

*Trydel Rsch. Pty., Ltd. v. ITW Glob. Tire Repair, Inc.*, No. 21 C 4977, 2022 WL 13919259, at *2

---

[2] After all, counsel filed a lawsuit – a public document – which stated, "[u]pon information and belief, the Accused Product is a puncture sealing agent that is offered for sale and sold and used as a tire repair solution, and which contains rubber latex comprising a natural and synthetic rubber mixed with an anti-freezing agent that includes glycerin, with the glycerin in a ratio to the total weight of the puncture sealing agent of between 5 and 75% by weight." [No. 18-7165, Dkt. #1, Pars. 16-18]. Counsel had to have a basis for that, and it had to come from somewhere. The ultimate ruling here will be up to Judge Blakey, of course, but if counsel and the defendant had no basis for their allegations about what was in the accused product, it would seem that they might be in trouble.

(N.D. Ill. Oct. 24, 2022). All that is exemplified by the parties' briefs, which rely on handfuls of cases reaching seemingly diametrically opposed rulings in the parties' eyes. Different judges might arrive at different conclusions in similar situations. So, taking a sweeping position to cover so many distinct questions is probably not a compelling strategy.

As for the documents at issue, it should be noted that the parties have not met and conferred regarding this part of their dispute. [Dkt. #107, at 5]. They should do so while completing their joint submission regarding the depositions. They can provide a report regarding the success or failure of their efforts when they file their joint submission regarding the depositions. If the parties remain at loggerheads, the court will refer back to the briefs they have already filed to rule. Along the way, it wouldn't hurt for the parties to whittle down their extensive disputes – seemingly 4 dozen or so questions and objections and 240 documents – to something a bit more manageable in light of limited judicial resources. Local Rule 37.2 requires more than just meeting and conferring; it requires meeting and conferring *in good faith*. Good faith isn't evinced by merely meeting where both sides simply dig in and refuse to budge. *See, e.g., Gunn v. Stevens Security & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("... adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2."). The court will expect the parties' joint submission on the deposition questions within 30 days.

For the reasons set forth above, the plaintiff's "Motion to Compel Production of Documents and Testimony" [Dkt. #92, 94] is denied without prejudice, with the expectation that the parties will file the joint submission regarding the deposition questions described above and that they meet and confer regarding the documents at issue.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/15/24