## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TRYDEL RESEARCH PTY. LTD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4977 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ITW GLOBAL TIRE REPAIR, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

On March 8, 2024, the plaintiff filed a "Motion to Compel Corporate Deposition Testimony under Rule 30(b)(6)," claiming that the defendant's corporate representative, Mr. Mallon, was unprepared to testify on a number of topics. As a remedy, the plaintiff seeks a second Rule 30(b)(6) deposition "of no more than seven hours" so that those few topics can be addressed. He also wants attorneys' fees and costs. For the following reasons, the plaintiff's motion [Dkt. ##97, 99] is denied in part and granted in part.

Mr. Mallon is apparently an interesting fellow. This is the *second* motion the plaintiff has filed in as many days [Dkt. ##92, 94, 97, 99], just three weeks before the close of fact discovery, seeking an additional deposition of him. The plaintiff's two-pronged strategy is confusing enough that the plaintiff felt the need to explain that "for the sake of clarity, [plaintiff] seeks one deposition of Mr. Mallon of no more than seven hours." [Dkt. #97, at 2 n.1]. That's good, because even one additional deposition approaching anything in the neighborhood of seven hours would be outlandish given the handful of topics at issue and how Mr. Mallon's deposition unfolded.

# I.

## THE HISTORY OF THE CONTROVERSY

Plaintiff served its quite extensive, twenty-seven-page, one hundred-and-three-topic "Notice of Rule 30(b)(6) Deposition" on November 16, 2023, giving the defendant 30 days to prepare a witness. That is a staggering number of topics, and, not surprisingly, the defendant objected to quite a few. While the parties claim to have met and conferred in good faith, as required by Local Rule 37.2, over the disputed topics on December 11, 2023, they "were unable to come to an accord for many of the topics"– in fact, about thirty of them. [Dkt. #97, at 2; #105, at 1]. A couple of months went by, and counsel went ahead with the deposition on February 15, 2023.

The deposition lasted just short of seven hours, the limit under Fed.R.Civ.Pro. 30(d)(2). The plaintiff did not bother to ask Mr. Mallon about twenty-seven of the topics that had been noticed. [Dkt. #105, at 4]. As was known ahead of time, Mr. Mallon was not going to testify about a number of other topics to which the defendant objected. The defendant says that, at a meet-and-confer some time after the deposition, the defendant "stated that it would consider making a Rule 30(b)(6) witness available for one or two more hours on discrete topics" or "consider providing written responses to a limited number of questions in writing." [Dkt. #105, at 5]. But, as the defendant does not share with the court how many "discrete topics" there were or what those "discrete topics" were, it is difficult to say that the defendant's offer was of any value.

In any event, the plaintiff's motion targets Topics Nos. 7, 13, 30, 36, 38, 42, 45, 48-51, 71, and 76. Topics 30, 42, and 45 are also the subject of the plaintiff's other motion to compel because the defendant objected to questions on those topics based on attorney-client privilege and work

product.[1]  As the Order on the plaintiff's other motion explains, the parties have quite a bit more work to do on those issues before any kind of ruling can be issued, so those three topics are not addressed here.  That leaves Topics Nos. 7, 13, 36, 38, 48-51, 71, and 76, which the plaintiff has chosen to group into Topics Nos. 7, 71, and 76, Topics Nos. 13 and 38, Topic No. 36, and Topics Nos. 48-51, which we shall assess topic by topic.

## II.

## THE TOPICS

### A.

**Topic 7:** All facts and circumstances supporting, refuting, or related to the ITWGTR's statement that, at various times, the average commodity price of glycerin has fluctuated and, at various times, the average commodity price for glycerin has been lower than the average commodity price of propylene glycol.  See Answer to Paragraph 14 of Second Amended Complaint.

The plaintiff did not ask Mr. Mallon about price fluctuation and comparative prices until there were about 25 minutes left in the deposition. (Mallon Dep., at 334). As we shall see, that turned out to be a pattern with the plaintiff's questioning or, perhaps more accurately, a deliberate strategy. Mr. Mallon testified that glycerin prices fluctuated due to feedstocks coming and going, but that they did not track propylene glycol prices, because the company had not used it during his tenure. (Mallon Dep., at 336-37).  Mr. Mallon admitted that he had not researched the historic pricing of propylene

---

[1] Frustratingly, the plaintiff waited until it was granted a fifth extension of fact discovery to file its two voluminous motions to compel which combine to cover two depositions, thirteen deposition topics, about four dozen unspecified deposition questions, and about 240 documents.  Clearly, there must have been a better, more organized way to have gone about this.  In the future, the plaintiff might wish to take heed of the Seventh Circuit's advice in *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006): "An advocate's job is to make it easy for the court to rule in his client's favor . . . ."

glycol. (Mallon Dep., at 337).

Obviously, this topic could not have been very important if plaintiff did not bother with it until after 4 p.m. in a deposition that began at 8 a.m. And really, it wasn't. Defendant has not used propylene glycol since 2006. The topic was drawn from plaintiff's allegation that the "average commodity price of glycerin from 2007 to 2018 was $600 per metric ton. By comparison, the average commodity price of propylene glycol was $1,800 per metric ton." The defendant admitted that "at various times, the average commodity price of glycerin has fluctuated, and, at various times, the average commodity price for glycerin has been lower than the average commodity price of propylene." [Dkt. #59, at Par. 14]. What more the plaintiff wanted to come out at the tail end of a day-long deposition the plaintiff doesn't say. Overall, there is nothing to see here, certainly nothing that would warrant another deposition after fact discovery is closed.

> TOPIC 71: All facts and circumstances relating to a connection or relationship between the prices of glycerin and the prices and margins for ITWGTR's Commercial Embodiments.

> TOPIC 76: All facts and circumstances supporting, refuting, or related to the ITWGTR's denial that the use of glycerin has enabled it to reduce prices and increase profits. See Answer to Paragraph 27 of the Second Amended Complaint.

Plaintiff contends that Mr. Mallon was unprepared for these topics because when asked if he "review[ed] any documents or talk[ed] to anybody in preparing for [his] deposition today to discuss about the functional or cost benefits of glycerin versus propylene glycol," Mr. Mallon said that he had not. (Mallon Dep., at 337). But neither topic mentions propylene glycol and, as with Topics No. 7, plaintiff did not get around to asking a question about the cost advantages of glycerin until there were about 25 minutes left in the deposition, and Mr. Mallon answered it. (Mallon Dep., at 333). Beyond that, Mr. Mallon testified at length about what impacts defendant's margins and

4

profits and how changes in raw material pricing and availability, including glycerin, affect ITWGTR's financials. (Mallon Dep., at 160-162 (testimony regarding tariff refunds, negotiated savings, price increases due to raw material pricing) 176-178 (testimony regarding price increases across the board, decrease in unit sales followed by rebounds, raw material costs affecting margins) 187 (January 2021 price increase, recovery of increased costs)).  Again, plaintiff fails to make a convincing case for an additional deposition of Mr. Mallon.

> TOPIC 13: The identification of each of ITWGTR's Pre-Patent Sealants and the identification of the formulations/compositions of each of ITWGTR's Pre-Patent Sealants, including all ingredients and their relative amounts.

> TOPIC 38: All facts and circumstances regarding Your knowledge of ITWGTR's Pre  Patent Sealants prior to the filing of the complaint in the ITWGTR v. Hopkins Litigation, including without limitation, Your knowledge of the formulations/compositions of each of ITWGTR's Pre-Patent Sealants.

As already indicated, there is a pattern here, as plaintiff did not ask about the formulation of defendant's pre-patent sealants until the very last question of the deposition, at 4:40 p.m.  (Mallon Dep., at 350).  It appears as though the plaintiff, which had been granted a fifth extension of the discovery deadline, felt is was unlikely Judge Blakely would allow a sixth.  And it appears as though plaintiff felt that Judge Blakey would not grant deposition time beyond the default seven hours set out in Fed.R.Civ.P.30(d)(1) because plaintiff could make no showing of "good cause" given the needs of the case and the issues at stake after almost two years of discovery.  *See, e.g., Mother & Father v. Cassidy*, 338 F.3d 704, 711 (7th Cir. 2003)("The . . . federal rules, . . . limit depositions to seven hours, with a . . .  good-cause showing for extension."); *United States Sec. & Exch. Comm'n v. Kandalepas*, No. 18 CV 2637, 2018 WL 4005201, at *1 (N.D. Ill. Aug. 22, 2018); *see also Heard v. Becton, Dickinson & Co.*, No. 19 C 4158, 2023 WL 9692223, at *2 (N.D. Ill. Nov. 28, 2023)("The

need to close fact discovery is now at the forefront of "the needs of the case" for purposes of Rule 26(b)(1) proportionality."). So, from an objective perspective, it looks very much like the plaintiff attempted to sandbag the defendant and their Rule 30(b)(6) witness by waiting until the final half hour of the deposition to ask questions on the foregoing topics. Accordingly, the plaintiff's motion is denied as to Topics Nos. 7, 13, 38, 71, and 76.

**B.**

TOPIC 36: All facts and circumstances relating to ITWGTR's first awareness of Trydel, including but not limited to, the identification of the dates upon which, and the circumstances under which, ITWGTR first became aware of Trydel's tire sealants, and the identification of the persons who became aware of them.

This topic was apparently taken a bit more seriously by the plaintiff, bringing it up just four and a half hours into the proceedings. The questioning went this way:

Q. When did ITW first become aware of Trydel?

MR. HERSH: Object to form.

THE DEPONENT: I'm not 100 percent positive, but I believe sometime in the summertime or late summer of 2018.

BY MR. SHULL:
Q. And how did they become aware of Trydel in the summer of 2018?

A. I'm not positive, but I believe that we encountered some sealant and attained an SDS sheet that showed that Trydel was the manufacturer.

Q. And was it the summer of 2018 when you obtained that safety data sheet?

A. I believe so.

Q. Do you know who and how they obtained that safety data sheet?

A. I do not.

Q. When did ITW first become aware that Trydel had patents relating to tire sealants?

6

MR. HERSH: Object to form.

THE DEPONENT: Sorry.  At some point during the investigation of those SDS sheets, I would guess.

(Mallon Dep., at 188-189).

Plaintiff then asked whether Mr. Mallon had spoken with a Bill Keller in preparation for the deposition, because, apparently, there had been a meeting among Mr. Keller, Tony DeCinque and Mike Scott in the Spring of 2017.  Mr. Mallon said he knew about that meeting, knew that it was short, and knew that they had discussed tire sealant products because someone from legal had told him during deposition preparation.  (Mallon Dep., at 190-192).

The plaintiff's issue with the way things went on this topic appear to be that Mr. Mallon did not sit down with Mr. Keller as part of his preparation for the several dozen topics in plaintiff's deposition notice.  But, all that was required of the defendant and Mr. Mallon was a "conscientious, good faith endeavor" to prepare Mr. Mallon for those 103 topics. *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc*., No. 18-CV-0825, 2022 WL 3053606, at *2 (N.D. Ill. June 1, 2022); *Beverley v. New York City Health and Hospitals Corp*., No. 18-CV-08486 (ER), 2024 WL 2125402, at *6 (S.D.N.Y. May 13, 2024); *In re Google RTB Consumer Priv. Litig*., No. 21CV02155YGRVKD, 2023 WL 5836816, at *2 (N.D. Cal. Sept. 8, 2023). "There is no requirement that a Rule 30(b)(6) witness memorize thousands of pages of documents and be able to recall in exacting detail the minutia of such voluminous records." *Beijing Choice Elec. Tech*., 2022 WL 3053606, at *2. *See also Bierk v. Tango Mobile, LLC*, 2021 WL 698479, at *3 (N.D. Ill. Feb. 23, 2021); *Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, 2013 WL 3672964, at *2 (N.D. Ill. July 12, 2013); *see also Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 1511901, at *2

7

(N.D. Cal. Jan. 27, 2012)(". . . the obligation of the responding party to "'make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter," as that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand.").

The defendant and Mr. Mallon met the "good faith" obligation here. There is no requirement that one side prepare in the manner desired by their opponent or speak with individuals on their opponent's wishlist. The plaintiff's motion is denied as to Topic No. 36.

## C.

TOPIC 48: All facts and circumstances relating to any awareness by ITWGTR of DE19753630A or DE19758820A, including but not limited to, the identification of the dates upon which, and the circumstances under which, ITWGTR or ITW first became aware of DE19753630A or DE19758820A, and the identification of the persons who became aware of them.

TOPIC 49: All facts and circumstances relating to Your Communications with Stehle regarding DE19753630A and/or DE19758820A.

TOPIC 50: All facts and circumstances relating to TERRA-S's first sale or offer for sale of any tire sealant containing glycerin, including but not limited to, the date of the first sale or offer for sale, the formulations/compositions of each such tire sealant sold or offered for sale, and where such tire sealants were first sold or offered for sale.

TOPIC 51: All facts and circumstances relating to TERRA-S's first advertisement or promotion of any tire sealant containing glycerin, including but not limited to, the dates of the first advertisement(s) or promotion(s), the formulations/compositions of the tire sealant advertised or promoted, and the media through which the tire sealant was first advertised or promoted.

These topics are quite another matter from Topics Nos. 7, 13, 38, 71, and 76. Topics 48-51 are targeted at the defendant's knowledge of invalidating "prior art" to the '041 Patent at the heart

of this case. The defendant admittedly did not prepare Mr. Mallon for these topics as it objected to each them in advance of the deposition:

> Defendant objects that this Topic impermissibly seeks information beyond the scope of Rule 30(b)(6), in that it is overly broad, unduly burdensome, and disproportionate to the needs of the case as it calls for Defendant to designate, prepare, and present a corporate representative to provide information that is not relevant to any claims or defenses at issue in this litigation. Thus, Defendant will not prepare a witness to testify on this Topic.

[Dkt. #105, Page 21-22/23]. As such, there was no opportunity for "gamesmanship" on plaintiff's part. But, the defendant's objections were the type of unsupported, unamplified boilerplate objections that all too many lawyers insist on making despite the fact that courts consistently find them meaningless and take pains to condemn them. *See, e.g., Moran v. Calumet City*, 54 F.4th 483, 497 (7th Cir. 2022)("His response consisted of boilerplate objections and referred the defendants to the factual allegations in his complaint. This is poor discovery practice."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015)(it is not an abuse of discretion to ignore the plaintiff's boilerplate objections); *Gibbs v. Abt Elecs., Inc.*, No. 21 C 6277, 2023 WL 6809610, at *3 (N.D. Ill. Oct. 16, 2023)("Unexplained, boilerplate objections to discovery are 'tantamount to not making any objection at all.'"); *Arriaga v. Dart*, No. 20 C 4498, 2023 WL 1451526, at *2 (N.D. Ill. Feb. 1, 2023)("[Plaintiff's] boilerplate objections reflect poor discovery practice."); *Donald v. City of Chicago*, No. 20 C 6815, 2022 WL 621814, at *2 (N.D. Ill. Mar. 3, 2022) ("[U]nadorned, boilerplate objections are tantamount to no objections and operate as a waiver."); *Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 WL 5564867, at *2 (N.D. Ill. Nov. 29, 2021)("Boilerplate objections are still unacceptable – always and everywhere."). And the defendant does little or nothing to flesh them out in its response brief.

9

Defendant's entire argument in support of its refusal to prepare Mr. Mallon on Topics Nos. 48-51 consists of three or four sentences and is devoid of any citation to caselaw. Consequently, it doesn't merit consideration. *See, e.g., United States v. McGhee*, 98 F.4th 816, 824 (7th Cir. 2024)"[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . . It is not this court's responsibility to do the work of researching and constructing legal arguments for parties, particularly those with counsel."); *Williams v. DeJoy*, 88 F.4th 695, 705 (7th Cir. 2023)("None [of the arguments] exceeds thirty words. All these, as perfunctory and undeveloped arguments ... are waived."); *Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023)("[Defendant's] arguments are wholly lacking, and we have made clear that such perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Defendant merely asserts that the "German patents bear little relationship to Trydel's US Sherman Act claims," and that it "was entitled to rely on the presumption that its duly issued patent was valid." [Dkt. #105, at10]. But, those are mere unsupported assertions and are the types of contentions that have to be proven if and when discovery is completed.

## CONCLUSION

Accordingly, I exercise my extremely broad discretion, *see, e.g., Jones v. City of Elkhart, Ind*., 737 F.3d 1107, 1115 (7th Cir. 2013); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997), to find the plaintiff is entitled to depose a 30(b)(6) witness prepared to testify on Topics Nos. 48-51, but those four topics only. As stated earlier, the plaintiff has not shown it is entitled to any additional time on the other topics. However, because the plaintiff chose to bifurcate its attack on Mr. Mallon's preparedness, and additional work is needed on the other motion, the final tally of how much time the plaintiff will be entitled to will have to wait — although the four topics

out of the one hundred the plaintiff noticed should not require more than a half hour to three quarters

of an hour.  I also find that this matter is not appropriate for any award for fees or costs.


ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/20/24